(30 Misc. Rep. 507.)

### CITY OF BROOKLYN v. SEAMAN et al.

(Supreme Court, Special Term, Kings County. February, 1900.)

1. TRUSTS—POWER OF ALIENATION—SUSPENSION.
   Where a conveyance of land reserving a life estate in the two grantors conveyed the same to a trustee to receive the rents and apply them to the use of the cestui que trust, and on his death to convey to his heirs in fee, the conveyance is void, since it required, if necessary, the suspension of the absolute power of alienation for three lives in being at the time of its execution and delivery.

2. WILLS—CONSTRUCTION.
   Where testator left one undivided fourth of his property to each of his three daughters "and her heirs forever," and to his "son during his natural life and to his heirs" the other undivided fourth, the land went in fee one-fourth to each of his daughters, and the other undivided fourth to the heirs of the son, as tenants in common, subject to the life estate of the son.

3. EMINENT DOMAIN—AWARD—PARTIES ENTITLED THERETO.
   Where land which was devised in undivided fourths to each of the testator's three daughters and to the heirs of his son, subject to the life estate of the son, was conveyed by the daughters and the son to the heirs of the son, subject to his life estate, after commissioners in condemnation had made their report, but before it was confirmed, the fund derived from such proceedings belongs to the son's heirs, subject to his life estate in the undivided one-fourth.

Eminent domain proceedings by the city of Brooklyn against Benjamin H. Seaman, in which Valentine Smith petitions for determination of conflicting claims to the award. Dismissed.

The sixth clause of Joseph Carman's will, referred to in the opinion, is as follows: "I give and bequeath to my son John Carman, the use during his natural life, and to his heirs, the one equal one-fourth (¼) part of all the remainder and residue of my estate and property of whatsoever kind or nature."

John Z. Lott, for petitioner.
Thomas Young, for respondent.

GAYNOR, J. Joseph Carman, the owner, and Eliza, his wife, reserving a life estate to themselves and their survivor by the terms of the conveyance, conveyed the land for which the award was made to Elizabeth Carman, wife of John Carman, their son, in trust to her and her successors to receive the rents and profits thereof and apply them to the use of the said John Carman during his life, and upon his death to convey the land to his heirs in fee.

If the said trust is valid, the said fund is now subject to it for the life of the said beneficiary, both of the said grantors, Joseph and Eliza Carman, being dead; and upon his death the said fund goes to his heirs. The conveyance creating the trust reserved a life

estate for the lives of the two grantors. Its further expressed purpose was on their death to hold the land in trust during the life of the beneficiary, John Carman, and make it inalienable until his death. This purpose contemplated and, if necessary, required, the suspension of the absolute power of alienation for three lives in being at the time of the execution and delivery of the conveyance, and was therefore void. It could be correctly said that if the beneficiary should die before the expiration of the life estate of the two grantors, the suspension would be for only two lives. But that is not the test. That there may need to be a suspension for more than two lives in a given case in order to carry out the scheme is the test. Chapl. Suspen.; Haynes v. Sherman, 117 N. Y. 433, 22 N. E. 938.

The said conveyance in trust being void, it follows that Joseph Carman died seised of the land, and we have to ascertain to whom it went on his death. He died testate before the condemnation proceedings were begun, leaving his said son and three daughters as his heirs. By the 3d, 4th and 5th clauses of his will he left one undivided fourth of his property to each of his daughters "and her heirs forever," following the same form in making each devise; and then, varying the form, he left "to my son John Carman, the use during his natural life, and to his heirs," the other undivided fourth. This is of peculiar structure; but I do not see any meaning that can be given to the words "and to his heirs," except that they give the fee to the said heirs; and that seems to have been the meaning intended by the testator. By the will of Joseph Carman, therefore, the land for which the fund in court was paid went in fee one undivided fourth to each of the said three daughters and one undivided fourth to the heirs of the said son, as tenants in common, subject to a life estate of the said son in an undivided fourth of it.

But thereafter the said daughters and son made a conveyance of the said land to the heirs of the said son, i. e. his six children; but "subject to the life use or occupation of John Carman, one of the parties of the first part." This did not convey any life estate to the said son John Carman, there being no such words of conveyance, but only had reference to and reserved his said life estate by the said will of his father in one undivided fourth of it. One of the said grantees has since died unmarried and intestate. It follows that the said fund belongs to the heirs of the said son, subject to his life estate in one-fourth of it.

The said conveyance to the children of the said John Carman was made after the commissioners in the condemnation proceedings had made their report, but before it was confirmed. The mere making of the report did not devest the owners of the fee. Brooklyn Charter, tit. 15, § 15. The claim of the petitioner, as administrator of his wife, one of the said grantors, and who has since died, that the fund is to be distributed as personalty, is therefore unfounded.

Let such an order be entered.